















```
PLA    9/5/02    14:19
3:02-M -02069   USA V. PEREZ
*1*
*CRCMP.*
```

FILED

02 SEP -5 AM 9:32

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Magistrate Case '02 mg 2069 |
| Plaintiff, ) | |
| ) | COMPLAINT FOR VIOLATION OF |
| v. ) | |
| ) | U.S.C. Title 18 |
| MIGUEL ANGEL PEREZ, ) | |
| ) | Section 1073 |
| Defendant. ) | |

The undersigned complainant being duly sworn states:

That on or about April 27, 2001, at San Diego, California, within the Southern District of California, defendant MIGUEL ANGEL PEREZ did knowingly and willfully move and travel in interstate and foreign commerce with the intent to avoid prosecution under the laws of the State of California for the felony crimes of: Murder, in violation of California Penal Code Section 187(a); Premeditated Attempted Murder, in violation of California Penal Code Sections 664 and 187(a); and Assault with Semi-Automatic Firearm, in violation of California Penal Code Section 245(b); all in violation of Title 18, United States Code, Section 1073.

And the complainant further states that this complaint is based on the attached affidavit which is incorporated herein by reference.

CRAIG A. PORTER
Special Agent, FBI

SWORN AND SUBSCRIBED TO before me
this 5th day of September, 2002.

HON. LOUISA S. PORTER
United States Magistrate Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AFFIDAVIT

I, Craig A. Porter being duly sworn, depose and say:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) assigned to the FBI Fugitive Squad, San Diego, California. I currently investigate violations of Title 18, United States Code, Section 1073 (Unlawful Flight to Avoid Prosecution).

2. This affidavit is made in support of a complaint charging Miguel Angel Perez ("PEREZ"), with Unlawful Flight to Avoid Prosecution, in violation of Title 18, United States Code, Section 1073.

3. On August 21, 2002, Assistant Chief (AC), Robert L. Locke, Case Issuing and Extraditions Division, District Attorney's Office, San Diego, California, requested FBI assistance in locating and apprehending PEREZ. AC Locke stated that on May 23, 2001, a criminal complaint was filed in the Superior Court of California, County of San Diego, San Diego Judicial District, Central Division on May 23, 2001, charging PEREZ with the following felony violations under California law: Murder, in violation of California Penal Code § 187(a); Premeditated Attempted Murder, in violation of California Penal Code §§ 664 and 187(a); and Assault with Semi-Automatic Firearm, in violation of California Penal Code § 245(b). On that same date, the court issued an arrest warrant for PEREZ.

//
//
//

4. AC Locke also advised that the criminal complaint arose from the murder of Raciel Anguiano ("Raciel") and the attempted murder/assault of Jaime Anguiano ("Jaime"). Investigation by the Chula Vista Police Department, including witness interviews and a review of the crime scene reveals the following:

    a. On April 26, 2001, at approximately 11:50 pm, Jaime drove to G.C.E Industrial Industries, 1891 Nirvana St. Chula Vista, California, to pick up his brother, Raciel, from his place of employment. Raciel told his brother Jaime, that he had a problem with a co-employee, Miguel Angel PEREZ, aka "Chulongo".

    b. As Jaime and Raciel drove west bound on Main Street, Chula Vista, CA, they saw PEREZ driving a Nissan truck east bound on Main Street. PEREZ made a u-turn and pulled his vehicle in front of Jaime's vehicle making him come to a stop. Raciel then exited the passenger side of his vehicle and PEREZ exited his vehicle. They met in between the two vehicles while Jaime remained in the driver's seat of his car. After a brief period, Raciel and PEREZ concluded their conversation and started walking back to their respective vehicles. Jaime then saw PEREZ reach into his truck and retrieve a nine millimeter pistol from the seat. PEREZ then raised the gun and shot Raciel multiple times, causing Raciel to fall to the ground. PEREZ then fired multiple times at Jaime, who was still seated in the driver's seat of his vehicle. Jaime fled the area in his vehicle -- backing away approximately 100 yards from the scene. From this view, Jaime observed PEREZ reload his pistol with a new magazine, walk within approximately two feet of Raciel, and fire several more rounds at Raciel as he lay on the ground. PEREZ then walked back to his

vehicle and drove away. Jaime, who had been shot in the left arm, drove to Raciel where he lay on the ground asking for help.

   c. Raciel later died at the scene from his wounds. Jaime sustained a gunshot wound to his left arm with the bullet lodging in his left chest area.

   d. Medical records indicate that Raciel had multiple perforating and penetrating gunshot wounds on the body, which resulted in his rapid death. Crime scene reports show that 26 nine millimeter casings were recovered and Raciel was shot 20 times by nine millimeter bullets.

  4. Shortly after the murder of Raciel and the attempted murder/assault of Jaime, the Chula Vista Police Department surrounded the residence of PEREZ at 205 Date Street, Chula Vista, California. PEREZ, however, was not there. Following a search of the residence, officers interviewed PEREZ's sister, brother and mother. PEREZ's mother indicated that she did not know PEREZ's whereabouts. However, PEREZ's siblings indicated that they believed that PEREZ had gone to Mexico. They also indicated that PEREZ's father lived in Tecate, Mexico. Since the shooting, all efforts by the Chula Vista Police Department to locate Perez in California have been met with negative results. I recently conducted further checks of law enforcement and commercial data bases, which include NCIC, Choice Point, ARJIS, and the Department of Motor Vehicles, and there is no indication that PEREZ has remained in the State of California.

  5. AC Locke advised that if PEREZ is located within the United States, his office would begin immediate extradition proceedings. If PEREZ is located in the Republic of Mexico, AC Locke will begin extradition proceedings or seek an Article IV prosecution (i.e., a

3

prosecution by Mexican authorities for crimes committed by a Mexican National in the United States).

6. Based upon the above facts, and my training and experience, I believe that PEREZ fled the State of California following the shootings of Raciel and Jaime and is living in Mexico in order to avoid prosecution, in violation of Title 18, United States Code, Section 1073. This opinion is based on the statements of his relatives following the above-described incident and the fact that since the murder of Raciel and the attempted murder/assault of Jaime in April, 2001, Perez has not been located in California or shown up on any law enforcement tracking systems as being present in California. That opinion is also based on information given by confidential sources to Detective Greg S. Puente, Chula Vista Police Department, wherein the sources stated that PEREZ has been seen in Tecate, Mexico with his band, and that he has recently moved to Guadalajara, Mexico with his father Everisto Limas Perez, and his sister Eva Perez.

7. This complaint for Unlawful Flight to Avoid Prosecution (18 U.S.C. Section 1073) is not barred by the statute of limitations because "no statute of limitations shall extend to any persons fleeing from justice" under 18 U.S.C. Section 3290.

//
//
//
//
//
//
//
//
//

4

8. PEREZ is described as follows:

```
Name:       Miguel Angel Perez
Aliases:    Chulongo
Sex:        Male
POB:        California
DOB:        January 16, 1981
Race:       Hispanic
Height:     6'0"
Weight:     200 lbs.
Eyes:       Brown
Hair:       Brown
CADL:       B7567801
SSN:        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
```

_____
Craig A. Porter
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to
before me this ___ day of September, 2002.

_____
THE HONORABLE LOUISA S. PORTER
UNITED STATES MAGISTRATE JUDGE

5